IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| DANIEL M. MALONE, ) | |
| ) | CASE NO. BK10-81962-TLS |
| Debtor(s). ) | A12-8002-TLS |
| RICHARD D. MYERS, Trustee of the ) | |
| Daniel Malone Chapter 7 bankruptcy estate, ) | |
| ) | |
| Plaintiff, ) | CHAPTER 7 |
| ) | |
| vs. ) | |
| ) | |
| JEANNE MALONE, ) | |
| ) | |
| Defendant. ) | |

ORDER

This matter is before the court on the defendant's motion for summary judgment (Fil. No. 21) and objection by the plaintiff (Fil. No. 39). J.P. "Sam" King represents the plaintiff, and David A. Domina represents the defendant. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is denied.

The debtor owned an interest in and was the managing member of a limited liability company that owned and operated an assisted-living facility in Omaha, Nebraska. Mr. Malone and his wife, who is the defendant in this case, borrowed $250,000, which was used to purchase a 25 percent membership interest in the limited liability company in the defendant's name. Mr. Malone subsequently paid off the promissory note according to its terms. Mr. Malone filed a Chapter 7 bankruptcy petition in 2010. The trustee now alleges the parties engaged in fraudulent transfers under state and bankruptcy law to protect assets from creditors, and he seeks to recover from the defendant the amount of the transfer or her membership interest in the limited liability company. The defendant denies that any fraudulent transfers occurred and now moves for summary judgment.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The court must examine the record to ascertain whether the movant, through depositions, answers to interrogatories, admissions, affidavits, and other evidence, has demonstrated the absence of a genuine issue of

material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006). If the movant has done so, then the non-moving party, bearing the burden of persuasion, must by affidavit or otherwise, set forth specific facts showing that there is a genuine issue for trial. *Id.* The court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue. *Great Plains Real Estate Dev., L.L.C. v. Union Cent. Life Ins. Co.*, 536 F.3d 939, 943-44 (8th Cir. 2008). An issue is genuine if it has a real basis in the record, and a genuine issue of fact is material if it might affect the outcome of the suit. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The following facts are uncontroverted and are taken from the parties' submissions:

1. The debtor, Daniel Malone, and the defendant, Jeanne Malone, married on August 8, 1970, and are the parents of nine children.

2. Since 1982, Mr. Malone has worked in the real estate business. Until 2005, Mrs. Malone remained at home to take care of their household and children.

3. The Malones' youngest child, Timothy, has been developmentally disabled since his birth in 1989. He resides with Mr. and Mrs. Malone at their home and requires constant care. Mrs. Malone is Timothy's permanent and primary caregiver.

4. Investment Property Resources, Inc. ("IPR") is a corporation created by Mr. Malone in 1976. Since that time, Mr. and Mrs. Malone have each owned 50 percent of the company. They have also been the officers and directors of the company.

5. A.G. Ventures, LLC, is a Nebraska limited liability company. In 2005, Mr. Malone owned an 80 percent interest in the company.

6. Between 2005 and 2009, Mr. Malone earned about $250,000 each year from his commercial real estate business.

7. Mrs. Malone began working in 2003 for the nonprofit Angel Guardians, Inc., which the Malones founded. This organization was designed to provide services and assistance to developmentally disabled people. Mrs. Malone was a volunteer for the first five years there; she is now paid $12 per hour for her work, which is approximately 40 hours per week.

8. At all relevant times stated in the amended complaint, Mr. Malone possessed an ownership interest in California Housing, L.L.C., and its successor, Via Christe, LLC.

9. Prior to Mrs. Malone's investment, California Housing had lost funding from its bank in the middle of the construction of its assisted living facility. It secured funding from a local bank, contingent that it would raise an additional $2,000,000 from private investors.

10. On June 21, 2005, Mrs. Malone signed an agreement with California Housing, L.L.C., agreeing to pay $250,000 in exchange for a 25 percent interest in California Housing, L.L.C. Paragraph 8 of the agreement specifically provides:

> G Malone agrees to contribute the sum of $250,000.00 as a capital contribution to California Housing L.L.C. For this sum, Malone shall be granted a 25% membership interest in California Housing based upon such consideration.

The "G Malone" in this statement refers to Jeanne Malone.

11. On. May 27, 2005, Mr. and Mrs. Malone signed a promissory note whereby they, along with two entities in which Mr. Malone owned an interest, promised to pay $250,000 to Rockbrook Village, Inc., Defined Benefit Plan, Russell S. Daub, Trustee.

12. In exchange for the note, Rockbrook Village Defined Benefit Plan, Russell S. Daub, Trustee ("Rockbrook"), loaned $250,000 to the Malones. The funds were then transferred by the Malones to California Housing, L.L.C.

13. Paragraph 12 of the 2005 note, concerning collateral, states that the indebtedness created by the note is secured by a second deed of trust, which was recorded on property owned by Maple Office Partners, LLC.

14. Mr. Malone owned an interest in Maple Office Partners, LLC, along with Robert Brau and James Keiter.

15. In December 2005, California Housing, L.L.C., changed its name to Via Christe, LLC.

16. Via Christe, LLC, issued a K-1 tax document to Mrs. Malone in 2005 which stated that the $250,000 contributed by her to Via Christe, LLC, was a "capital contribution."

17. In January 2009, Via Christe was able to refinance with a loan from an Omaha church, which loaned $250,000 to Via Christe. Via Christe then paid at least $200,000 to the Malones.

18. The Rockbrook note was paid off by a payment of $200,000 on January 30, 2009, and a payment of $54,542.07 on July 27, 2009.

19. Mr. Malone filed the underlying Chapter 7 bankruptcy petition on July 7, 2010.

20. Mr. Malone's bankruptcy schedules list an undisputed claim of $24,000 held by the IRS for unpaid trust fund payroll taxes for IPR for all quarters in 2005, as well as an undisputed claim of $100,802.63 held by the IRS for unpaid trust fund payroll taxes for A.G. Ventures for all quarters in 2005.

21. Dennis Walker filed a lawsuit against Mr. Malone in 2003. A judgment in excess of $600,000 was entered against Mr. Malone and another person in December 2005.

22. In 2004, John Moylan loaned Mr. Malone $280,000. Payments of $215,000 have been made on the loan, leaving a balance due of $65,000. This debt was listed as unsecured in Mr. Malone's bankruptcy schedules.

23. On December 2, 2011, Mr. Malone testified that a majority of the payments on the Rockbrook note were made from the funds in the Malones' joint bank account.

24. Mr. Malone subsequently testified on November 30, 2012, that most of the payments on the Rockbrook note likely came from IPR's account.

The trustee is challenging as fraudulent not only the transfer of the 25 percent interest in Via Christe to Mrs. Malone, but also each payment made on the Rockbrook promissory note for the proceeds used to purchase the Via Christe interest, as well as Via Christe's repayment of the loan and Mr. Malone's subsequent transfer of those funds in repayment of the Rockbrook note.

The Bankruptcy Code provides the trustee with authority to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim[.]" 11 U.S.C. § 544(b)(1). "Applicable law" in this instance is the Nebraska Uniform Fraudulent Transfer Act. The advantage for the trustee, standing in the shoes of an unsecured claim holder, is a four-year look-back period.

In an action seeking to set aside a fraudulent transfer, the burden of proof is on a creditor (trustee in a bankruptcy case) to prove, by clear and convincing evidence, that fraud existed in a questioned transaction. *Eli's, Inc. v. Lemen*, 591 N.W.2d 543, 555 (Neb. 1999) (citing *Dillon Tire, Inc. v. Fifer*, 589 N.W.2d 137 (Neb. 1999)). Clear and convincing evidence is "that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved." *Id.* at 555-56 (quoting *Dillon Tire*, 589 N.W.2d at 142).

A transfer by a debtor is fraudulent as to present and future creditors if the debtor made the transfer:

1. with actual intent to hinder, delay, or defraud any creditor, or
2. without receiving a reasonably equivalent value in exchange for the transfer, and the debtor:
    (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation; or
    (ii) intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Neb. Rev. Stat. § 36-705(a).

The state fraudulent transfer statutes encompass alternative prongs of liability – either proof of actual intent to hinder, delay, or defraud creditors, or proof of a transfer for less than reasonably equivalent value made while the debtor was insolvent or which caused the debtor to become insolvent. Neb. Rev. Stat. § 36-706(a).

"Value" is defined in the fraudulent transfer statute as follows:

(a) Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

(b) For the purposes of subdivision (a)(2) of section 36-705 and section 36-706, a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust, or security agreement.

(c) A transfer is made for present value if the exchange between the debtor and the transferee is intended by them to be contemporaneous and is in fact substantially contemporaneous.

Neb. Rev. Stat. §36-704.

The Nebraska fraudulent transfer statute lists 11 "badges of fraud" that may be considered when determining actual intent under § 36-705(a)(1). Those factors are:

1. whether the transfer was to an insider;
2. whether the debtor retained possession or control of the property transferred after the transfer;
3. whether the transfer was disclosed or concealed;
4. whether before the transfer was made, the debtor had been sued or threatened with suit;
5. whether the transfer was of substantially all the debtor's assets;
6. whether the debtor absconded;
7. whether the debtor removed or concealed assets;
8. whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
9. whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
10. whether the transfer occurred shortly before or shortly after a substantial debt was incurred; and
11. whether the debtor transferred the essential assets of the business to a lienor who

        transferred the assets to an insider of the debtor.

Neb. Rev. Stat. § 36-705(b).

        An insider under the Uniform Fraudulent Transfer Act includes a relative of the debtor, § 36-702(7)(i)(A), and a relative is defined as a spouse or an individual related to the debtor or the spouse by consanguinity within the third degree as determined by common law. § 36-702(11).

        The trustee also proposes to avoid the transfers under 11 U.S.C. § 548(a)(1)(B), which deals with constructively fraudulent transfers. It does not require a showing of intent. Rather, it requires the trustee to prove the debtor's insolvency at the time of, or as a result of, the transfer, and the debtor's receipt of less than a "reasonably equivalent value" in the exchange. Both are fact questions, with the trustee bearing the burden of proving the elements of § 548 and the transferee carrying the burden of proving that the transfer was for reasonably equivalent value and the debtor remained solvent after the transfer. *See Dietz v. St. Edward's Catholic Church (In re Bargfrede)*, 117 F.3d 1078, 1080-81 (8th Cir. 1997).

        In evaluating the issue of reasonably equivalent value, the Bankruptcy Appellate Panel of the Eighth Circuit has explained the necessary analysis:

> To succeed on a claim under 11 U.S.C. § 548(a)(1)(B)(i), the Chapter 7 Trustee must demonstrate, by a preponderance of the evidence, that payments a debtor made were not in exchange for reasonable equivalent value. *Pummill v. Greensfelder, Hemker & Gale (In re Richards & Conover Steel, Co.)*, 267 B.R. 602, 612 (8th Cir. B.A.P. 2001). "This requires analysis of whether: (1) value was given; (2) it was given in exchange for the transfers; and (3) what was transferred was reasonably equivalent to what was received." *Id.* The payment of money is unquestionably the giving of "value." 11 U.S.C. § 548(d)(2)(A). When evaluating a transfer for reasonable equivalency of value as compared to a money payment, a court must examine the whole transaction and measure all the benefits – whether they be direct or indirect. *Christians v. Crystal Evangelical Free Church (In re Young)*, 82 F.3d 1407, 1415 (8th Cir. 1996) (holding that the trustee could not recover tithes to a church under 11 U.S.C. § 548), *vacated*, 521 U.S. 1114, 117 S. Ct. 2502, 138 L. Ed. 2d 1007 (1997) (vacating for further consideration on the legitimacy of the Religious Freedom Restoration Act), *reinstated*, 141 F.3d 854 (8th Cir. 1998), *cert. denied*, 525 U.S. 811, 119 S. Ct. 43, 142 L. Ed. 2d 34 (1998). If the measure for reasonable equivalency is the value of an indirect benefit then that benefit must be tangible. *Richards & Conover Steel, Co.*, 267 B.R. at 612-13.

*Meeks v. Don Howard Charitable Remainder Trust (In re S. Health Care of Ark., Inc.)*, 309 B.R. 314, 319 (B.A.P. 8th Cir. 2004).

        The satisfaction of an antecedent debt of the debtor may constitute "equivalent value," but the satisfaction of a third party's debt normally does not. *Richards & Conover Steel*, 267 B.R. at 613

(citing *Bargfrede*, 117 F.3d at 1080 (finding no reasonably equivalent value when husband pays a spouse's debt from his separate assets); *Leonard v. Norman Vinitsky Residuary Trust (In re Jolly's, Inc.)*, 188 B.R. 832, 842 (Bankr. D. Minn. 1995) (holding that transfers made solely for benefit of third party do not furnish reasonably equivalent value); and *Biggs v. United States Nat'l Bank*, 11 B.R. 524, 527 (D. Neb. 1980) (same)).

"Value," for purposes of § 548, is defined in § 548(d)(2)(A) as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor."

The focus is on what the debtor surrendered and what he received, regardless of any benefit flowing to a third party. *Richards & Conover Steel*, 267 B.R. at 614, n.4. "If the exchange preserves or enhances the debtor's net worth, then the transfer was not fraudulent even if a third party was the intended beneficiary of the transfer." *Id.* (citing *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 992 (2d Cir. 1981)).

Despite the parties' assertions to the contrary, the evidence currently before the court leaves numerous issues of fact in contention on the elements that each side must prove. Summary judgment would be premature on this record. The matter will be scheduled for trial.

IT IS ORDERED: The defendant's motion for summary judgment (Fil. No. 21) is denied.

DATED:    February 5, 2013

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
*David A. Domina
J.P. "Sam" King
U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.